# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUAN J. GONZALEZ,<br>　　　　Plaintiff,<br>　　v.<br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br>　　　　Defendant. | NO. EDCV 16-00041-KS<br><br>MEMORANDUM OPINION AND ORDER |

## INTRODUCTION

Plaintiff filed a Complaint on January 7, 2016, seeking review of the denial of his application for supplemental security income ("SSI"). On February 22, 2016, the parties consented, pursuant to 28 U.S.C. § 636(c), to proceed before the undersigned United States Magistrate Judge. (Dkt. Nos. 11-13.) On June 2, 2016, the parties filed a Joint Stipulation ("Joint Stip.") in which plaintiff seeks an order reversing the Commissioner's decision and ordering the payment of benefits or, in the alternative, remanding for further proceedings. (Joint Stip. at 15-16.) The Commissioner requests that the ALJ's decision be affirmed or, in the alternative, remanded for further proceedings. (*See id.* at 16.) The Court has taken the matter under submission without oral argument.

## SUMMARY OF ADMINISTRATIVE PROCEEDINGS

On January 31, 2012, plaintiff, who was born on September 19, 1959, filed an application for SSI.[1] (*See* Administrative Record ("AR") 241-61.) Plaintiff alleged disability commencing September 13, 2007 due to numbness in his legs and back pain. (*Id.* 242.) Plaintiff previously worked as a landscaper (DOT 406.687-010). (*Id.* 21.) After the Commissioner denied plaintiff's applications initially (*id.* 85-89) and on reconsideration (*id.* 91-102), plaintiff requested a hearing (*see id.* 120). Administrative Law Judge Troy Silva ("ALJ") held hearings on November 22, 2013 (*id.* 28-40), March 21, 2014 (*id.* 63-84), and May 16, 2014 (*id.* 41-62). Plaintiff, who was represented by counsel, testified before the ALJ as did two vocational experts ("VEs"): Sandra Fioretti, who testified at the March 21, 2014 hearing; and Troy Scott, who testified at the May 16, 2014 hearing. (*See* AR 41-42, 63-64.) Psychologist David Glassmire, PhD ABPP, testified as a medical expert at the May 16, 2014 hearing. (*See id.* 41-42; *see also id.* 226.) On July 24, 2014, the ALJ issued an unfavorable decision, denying plaintiff's application for SSI. (*Id.* 19-23.) On November 13, 2015, the Appeals Council denied plaintiff's request for review. (*Id.* 1-4.)

## SUMMARY OF ADMINISTRATIVE DECISION

The ALJ found that Plaintiff had not engaged in substantial gainful activity since his January 31, 2012 application date. (AR 13.) The ALJ further found that plaintiff had the following severe impairments: status post-operative lumbar spine; unspecified psychotic disorder; unspecified mood disorder; and polysubstance abuse (methamphetamine abuse). (*Id.*) The ALJ concluded that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any impairments listed in 20 C.F.R. part 404, subpart P, appendix 1 (20 C.F.R. §§ 416.920(d), 416.925, 416.926), and he

---

[1] Plaintiff was 52 years old on the application date and thus met the agency's definition of a person closely approaching advanced age. *See* 20 C.F.R. § 416.963(d).

2

explained his rationale for finding that plaintiff's impairments did not meet or equal Listings 1.04, 12.03, 12.04, and 12.09. (*Id.* 13-15.) The ALJ determined that plaintiff had the residual functional capacity ("RFC") to perform light work with the following limitations:

> he can occasionally lift and carry 20 pounds and frequently lift and carry 10 pounds; he can stand and/or walk for six hours in an eight-hour workday and sit for six hours in an eight-hour workday; he can frequently climb ramps and stairs; he can occasionally crouch; he cannot climb ladders, ropes, and scaffolds; he can frequently kneel and crawl; he would be able to perform no-complex and routine tasks; he is to avoid tasks requiring hypervigilance; he is precluded from interacting with the public; he can occasionally perform tasks requiring team work; and he should be not responsible for safety of others.

(*Id.* 15.) The ALJ found that plaintiff was unable to perform his past relevant work as a landscaper but was capable of performing jobs that exist in significant numbers in the national economy, including the representative occupations of electronics worker (DOT 726.687-010), small product assembler (DOT 706.684-022), and parking machine operator (DOT 920.685-082). (*Id.* 21-22.) Accordingly, the ALJ determined that plaintiff had not been under a disability, as defined in the Social Security Act, from the application date through the date of the ALJ's decision. (*Id*. 22.)

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence in the record as a whole. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Gutierrez v. Comm'r of*

*Soc. Sec.*, 740 F.3d 519, 522-23 (9th Cir. 2014) (internal citations omitted). "Even when the evidence is susceptible to more than one rational interpretation, we must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012).

Although this Court cannot substitute its discretion for the Commissioner's, the Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (internal quotation marks and citation omitted); *Desrosiers v. Sec'y of Health and Hum. Servs.*, 846 F.2d 573, 576 (9th Cir. 1988). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

The Court will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). However, the Court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." *Orn*, 495 F.3d at 630; *see also Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003). The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists if the error is "'inconsequential to the ultimate nondisability determination,' or if despite the legal error, 'the agency's path may reasonably be discerned.'" *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (internal citations omitted).

## DISCUSSION

Plaintiff alleges the following error: the ALJ erred in failing to classify plaintiff's education level as illiterate at step five of the sequential analysis. (Joint Stip. at 5.)

## I. Applicable Law

A plaintiff's education level, including his English proficiency, is a vocational factor to be assessed at step five of the sequential analysis. 20 C.F.R. § 416.964. A plaintiff's education falls into one of four categories: (1) illiteracy; (2) marginal education, which generally translates to formal schooling at a 6th grade level or less; (2) limited education, which generally translates to formal education between a 7th and 11th grade education; and (4) high school education and above, which generally translates to formal schooling at a 12th grade level or above. *Id.* § 416.964(b).

Illiteracy is "the inability to read or write," and a person is illiterate "if [he] cannot read or write a simple message such as instructions or inventory lists even though the person can sign his or her name." *Id.* § 416.964(b)(1). A person's inability to read or write in English is considered the functional equivalent of illiteracy within the meaning of the Social Security Administration, even if that person may be literate in another language. *See Pinto v. Massanari*, 249 F.3d 840, 846 n. 4 (9th Cir. 2001); *Chavez v. Dep't of Health and Human Servs.*, 103 F.3d 849, 852-53 (9th Cir. 1996).

## II. Record Concerning Plaintiff's Illiteracy.

In his initial disability report, plaintiff reported that he could read and understand English and "write more than [his] name in English. (AR 307.) However, Plaintiff's sister, Tomasa Elida Gonzalez, completed plaintiff's adult function report for him and stated that he does not know how to read, write, or use a check book. (*Id.* 333, 335, 338.) Ms. Gonzalez also filled out a third party function report on which she again stated that plaintiff cannot read or write. (*Id.* 347.)

1 The examining clinical psychologist, Kathy Vandenburgh, Ph.D., observed on January 17, 2013 that plaintiff's native language is Spanish, but he spoke and understood English well. (AR 436.) She added that he had difficulty completing her questionnaire "due to reading and writing problems." (*Id.*) She also recorded that plaintiff had a history of a learning disability and had difficulty learning in school. (*Id.* 437.) He attended special education classes in school and dropped out of school after the 10th grade. (*Id.*) He never earned a GED (*id.*) but testified that he was "planning to take" the GED examination (*id.* 70). Dr. Vandenburgh noted that plaintiff reported reading the Bible daily, but did not specify whether plaintiff reads the Bible in English or Spanish. (*Id.* 438.) Plaintiff was neither able to spell his first name, "Juan," backwards nor the word "world." (*Id.* 439.) Plaintiff was also unable to complete Part B of the Trail Making Test because "he did not completely know his ABCs." (*Id.* 439.) Under diagnostic impressions, Dr. Vandenburgh wrote, *inter alia*, "[plaintiff] is unable to read or write." (*Id.* 441.)

The medical expert, Dr. Glassmire, testified at the May 16, 2014 hearing that, based on his review of the record, "[Plaintiff] had difficulty with reading, writing problems, including questionnaires, and difficulty pronouncing words. I wasn't entirely clear from that what his level of English fluency is." (AR 49.) The ALJ assigned the medical expert's testimony "great weight." (AR 20.)

At the March 21, 2014 hearing, the ALJ stated "[Plaintiff]'s unable to read or write; is that correct? You cannot read or write?" (AR 74.) Plaintiff responded, "No, I can't read. Uh-uh." (*Id.*) The ALJ used that information to find that plaintiff would have a marked impairment doing complex instructions but did not discuss plaintiff's inability to read or write in the context of his education level and literacy. (*See id.* 74; *see also* 15-21.)

\\
\\
\\

6

**III.    The ALJ's Decision.**

The ALJ found that plaintiff's statements at the hearings and in his adult function report were "less than fully credible" because:  (1) plaintiff engaged in "somewhat normal level of daily activity and interaction," including "preparing meals, helping with the dishes, vacuuming, cleaning, doing the laundry, doing the housework, using public transportation, shopping in stores, paying bills, and going to church;"  plaintiff had not received the type of medical treatment one would expect for a very disabled individual; plaintiff made inconsistent statements about his drug use; and plaintiff was "evasive or vague at times" during the hearings, including when he was "reluctant" to respond to the ALJ's question about incarceration.  (AR 16-17.)

The ALJ assigned "great weight" to the medical expert's testimony (AR 20), but little weight to Dr. Vandenburgh's opinion that plaintiff "has a verbal comprehension score of 54, working memory score of 58, processing speed score of 62, perceptual reasoning score of 71, immediate memory index score of 42, and a full-scale IQ score of 55 . . . and marked limitation in ability to understand instructions that is detailed and complicated."  (*Id.* 20) (errors in original).   The ALJ explained that these test scores and assessments are inconsistent with plaintiff's treatment records, citing a September 7, 2012 rapid psychiatric evaluation performed at the Riverside County Regional Medical Center, which noted that plaintiff exhibited "fair" attention and concentration, "good" memory, judgment, and insight," and estimates of his intelligence were "average." (*Id.* 20, 400.)

The ALJ did not make any findings regarding plaintiff's ability to read or write in English (*see generally* AR 15-22), noting only that plaintiff "claimed that he does not know how to read and write" (*id.* 15).   Nevertheless, the ALJ concluded at step five of the sequential analysis that plaintiff "has a limited education and is able to communicate in English." (*Id.* 21.) The Commissioner states that the ALJ "apparently based his finding on

7

1 Plaintiff's statements that he completed the 10th grade" and "apparently discounted
2 [plaintiff's] testimony [that he could not read or write] based on plaintiff's general lack of
3 credibility." (Joint Stip. at 10-11.) The Commissioner states that the ALJ's finding that
4 plaintiff had a limited education had a logical foundation in the record – namely, his reported
5 completion of the 10th grade, albeit with difficulty and in special education classes in Texas
6 in the 1960s and 70s.[2] (*Id.* at 11.) Finally, the Commissioner suggests substantial evidence
7 supports the ALJ's finding because: in his initial disability report, plaintiff reported that he
8 could read and understand English and "write more than [his] name in English (AR 307);
9 plaintiff exhibited "some capacity" read and write during his consultative psychological
10 examination with Dr. Vandenburgh; and plaintiff reported that he "was planning on taking
11 the examination to obtain a GED." (Joint Stip. at 11-12.)

13 The Court cannot affirm the ALJ's decision based on the Commissioner's *post-hoc*
14 rationalizations that attempt to intuit the ALJ's rationale, and the ALJ offered no explanation
15 for his decision that plaintiff satisfies the standard for literacy. *See Bray v. Astrue*, 554 F.3d
16 1219, 1225-26 (9th Cir. 2009) ("Long-standing principles of administrative law require us to
17 review the ALJ's decision based on the reasoning and factual findings offered by the ALJ –
18 not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been
19 thinking."). Further, a review of the record reveals that the ALJ's determination is not
20 supported by substantial evidence.

22 Only two pieces of evidence in the record suggest that plaintiff was able to read or
23 write in English: plaintiff's completion of 10th grade in special education classes in the
24 1970s; and plaintiff's statement in the initial disability report that he could read and write

---

[2] Plaintiff turned 16 in September 1975, the year the United States Congress passed the Education of the Handicapped Act, P.L. 94-142, 89 Stat. 773 (1975), in which Congress found that, *inter alia*, "the special educational needs of [handicapped] children are not being fully met," "more than half of the handicapped children in the United States do not receive appropriate educational services," and "present financial resources [of state and local educational agencies] are inadequate to meet the special educational needs of handicapped children." §3(b), P.L. 94-142.

8

more than his name in English. Plaintiff's desire to take the examination to obtain a GED is not evidence that he is literate in English because: (1) he has not taken, let alone passed, the test in English; and (2) he could take the GED test in Spanish, which the record identifies as his "native language." The record also does not support the Commissioner's contention that plaintiff demonstrated "some capacity" to read or write in English during his consultative psychological examination with Dr. Vandenburgh because plaintiff was unable to complete the written questionnaire at that examination "due to reading and writing problems," was unable to spell either his first name, "Juan," backwards or the word "world," did not know his ABCs, and did not specify the language of the Bible he reported reading. (AR 436, 439.)

The preponderance of evidence in the record conflicts with the ALJ's conclusion that plaintiff can read or write a simple message in English. The medical expert testified that plaintiff has "reading, writing problems" that restrict his English fluency. (AR 20, 49.) The examining clinical psychologist observed, as stated above, that plaintiff: was unable to complete a written questionnaire without assistance due to difficulties reading and writing; did not know his ABCs; and could neither spell his first name, "Juan," backwards nor spell the word "world." (*Id.* 436, 439.) Plaintiff's sister, Tomasa Elida Gonzalez, completed plaintiff's adult function report for him and stated that plaintiff does not know how to read, write, or use a check book. (*Id.* 333, 335, 338.) Ms. Gonzalez also filled out a third party function report on which she again stated that plaintiff cannot read or write. (*Id.* 347.) Finally, at the March 21, 2014 hearing, plaintiff testified that he was unable to read, and the ALJ appeared to conclude, based on the record, that plaintiff was illiterate. (*See id.* 74.)

Thus, only a scintilla of evidence in the record arguably supports the ALJ's conclusion. *See Gutierrez*, 740 F.3d at 522-23; *Lingenfelter*, 504 F.3d at 1035. Accordingly, the matter must be remanded.

\\
\\

**IV. Further Proceedings Are Appropriate.**

"The touchstone for an award of benefits is the existence of a disability, not the agency's legal error." *Brown-Hunter*, 806 F.3d at 496. Accordingly, a remand for an immediate award of benefits is appropriate only in "rare circumstances," and, before ordering that extreme remedy, the Court must satisfy itself that the following three requirements are met:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion;
> (2) the record has been fully developed and further administrative proceedings would serve no useful purpose; and
> (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

*Id.* However, even if those requirements are met, the Court retains "flexibility" in determining the appropriate remedy. *Burrell v. Colvin*, 775 F.3d 1133, 1141 (9th Cir. 2014) (quoting *Garrison v. Colvin*, 759 F.3d 995, 1021 (9th Cir. 2014)).

As plaintiff points out, an individual is disabled if: he is "closely approaching advanced age;" he is limited to light work; his previous work experience is unskilled or none; and his education is "illiterate or unable to communicate in English." (Joint Stip. at 9) (citing 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 202.09). The ALJ found that plaintiff satisfies the first three of these factors: he was closely approaching advanced age on the application date; he is limited to light work; and his previous work as a landscaper was unskilled. Accordingly, if plaintiff is illiterate, he is disabled. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 202.09.

Further, the ALJ plainly did not provide legally sufficient reasons for discounting the evidence that plaintiff was illiterate because the ALJ did not provide any rationale for his conclusion that plaintiff was literate. Even assuming *arguendo* that the ALJ discounted plaintiff's testimony about his illiteracy for the same reasons that the ALJ discounted his subjective symptom testimony, the ALJ ignored: plaintiff's sister's statements that plaintiff could not read or write; the consulting psychologist's observations that plaintiff was unable to complete a written questionnaire due to difficulties reading and writing, did not know his ABCs, and could neither spell his first name, "Juan," backwards nor spell the word "world;" and the medical expert's observation that plaintiff has "reading, writing problems." (*See generally* AR 15-21.)

The ALJ's errors, and the lack of substantial evidence supporting his conclusion, are troubling, particularly in light of his statement at the March 21, 2014 hearing that "[plaintiff]'s unable to read or write." However, this is not one of the "rare circumstances" when further administrative proceedings would serve no useful purpose. Instead, plaintiff's statements about his literacy level are inconsistent, and he was not asked to explain the inconsistencies. For example, he stated on his initial disability report that he could read English and write more than his name in English, and he told the consulting psychologist that he read the Bible. In the absence of any explanation for these inconsistencies, and the lack of any evidence on the critical question of whether plaintiff can read or write a simple message, the Court cannot say that the record mandates a finding that plaintiff is illiterate as that term is defined by the regulations. Furthermore, although plaintiff is necessarily disabled if he is illiterate, he may not be disabled if he is found to have only a marginal education due to his severe difficulties reading and writing. Instead, in such a scenario, further factual development would be necessary. Thus, the factual record concerning plaintiff's level of education is not fully developed and the record does not mandate either a disability or a nondisability determination. Therefore, the matter must be remanded for further proceedings consistent with this Order.

## CONCLUSION

Accordingly, for the reasons stated above, IT IS ORDERED that the decision of the Commissioner is REVERSED, and this case is REMANDED for further proceedings consistent with this Memorandum Opinion and Order.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for plaintiff and for defendant.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATE: October 11, 2016

_____
KAREN L. STEVENSON
UNITED STATES MAGISTRATE JUDGE